## Reid *against* Morrison.

If the drawee of a bill or maker of a note remove from his usual place of residence to another in the same state or kingdom, the holder must make reasonable endeavour to find out whither he has removed, and if he succeed, present the bill or note for payment.

But if the drawee or maker has absconded, that circumstance will dispense with the necessity of making further inquiry after him.

The same rule applies when the drawee or maker removes into another jurisdiction after the execution of the instrument.

Where after accepting a bill and making a note in Ireland, the party left Ireland for America, it was *held* to dispense with any effort by the holder to make presentment.

The same rule applies to the case of an endorser absconding from Ireland, under like circumstances, even though his place of residence in America becomes afterwards known to the holder.

Where the drawer and endorser of a bill and the endorser of a note is the prior debtor, and the acceptor and maker lent his name for his accommodation, he is considered a drawer without funds, and not entitled to notice.

The plaintiff may recover on a count for goods sold and delivered against the drawer and endorser of a bill and the endorser of a note, if he has not been guilty of laches.

THIS was a writ of error to the District Court for the city and county of *Philadelphia,* in which a verdict and judgment were rendered for the defendant.

It was an action of *assumpsit,* brought by John H. Reid and William Leckie, late partners as Reid & Leckie, to the use of J. H. Reid, against Thomas Morrison, to December Term 1833. The declaration contained three counts, viz:

1. On a promissory note, dated Dublin, December 23, 1825, drawn by J. Geoghegan to the order of, and endorsed by the defendant (who passed it before maturity to the plaintiffs), payable two months after date, for £30 sterling.

2. On a bill of exchange drawn by the defendant to his own order (and endorsed before maturity to the plaintiffs), upon, and accepted by Geoghegan for £36 sterling, dated Dublin, January 13, 1826, payable thirty-one days after date.

3. Claiming $500 for goods sold and delivered by the plaintiffs to the defendant, and $500 for moneys lent and advanced by the plaintiffs to the defendant.

It also averred that the plaintiffs, when the cause of action accrued, were in parts beyond seas, and continued to reside there.

The defendant pleaded *non assumpsit,* and the statute of limitations. The replication was that the plaintiffs were beyond seas.

The plaintiffs gave in evidence depositions, taken under two

n.—51          2 1*

commissions. The first established the hand-writing of the parties to the promissory note and bill; also that the defendant, in January 1826, left Ireland to reside in America. That both the defendant and J. Geoghegan had left Ireland before the bill or note fell due. That they (the witnesses) did not know if demand was made or notice given, but believed it was not, on account of the absence of the parties; and that the bill and note were not protested. That the defendant had absconded from Ireland in January 1826, and was followed by one of the witnesses to Liverpool, for a settlement of another debt, immediately previous to his sailing from Liverpool for the United States. That the plaintiffs lived and still lived beyond seas.

The second commission established that the plaintiffs were merchants, and the defendant a storekeeper dealing in the same goods. That John Geoghegan was a druggist. That the consideration of the bill of exchange and promissory note was cotton and other soft goods sold by the plaintiffs to the defendant; being renewals of other bills given by the defendant for those goods. That the defendant bought goods from the plaintiffs, and gave the plaintiffs his acceptances, and not being able to pay them at maturity, gave the bill and note on which suit is brought, as renewals of the same. That Morrison was in reality the principal debtor in the amounts on the face of the bill and note; and Geoghegan lent his name for the sole and exclusive accommodation of the defendant. One of the witnesses derived his knowledge of all these facts from having been at the time in the defendant's employment, and the other from having been at the same time in the employment of the plaintiffs.

The defendant gave in evidence the deposition of James Stuart, as follows: that he hath known both parties, plaintiff and defendant, for more than twelve years. Does not know the year when Mr Morrison left Ireland. Was not in Dublin at the time when Mr Morrison, the defendant, left there. The next fall or spring after the defendant left Ireland, I saw him in this country, but cannot tell within two or three years when it was. The summer immediately following my having seen Mr Morrison in Philadelphia, I had a conversation with the plaintiff, Mr Reid, who then knew where he (Morrison) was. Mr Reid, the plaintiff in the above suit, was in this country about 18 months since, and has not been in the country before, to my knowledge, since the making of the note and bill which are the subject of the suit.

I am in the practice of going every year to Ireland, and returning every year to America—going to Ireland in the spring, and returning in the autumn. I have seen Mr Reid on every return that I made to Ireland since the first conversation I had with him on the subject of Mr Morrison, previously mentioned, and he has frequently spoken of the defendant's residence, and I think has known it ever since.

Cross-examined—The plaintiffs are residents of Ireland; have lived more than ten years last past there. I think I had a conversation with defendant, I think last fall. He wanted to know of me what arrangement plaintiff had made with Geoghegan; he did not admit his liability, or make any promise.

The plaintiffs requested the Judge to charge the jury that, although no demand at maturity appeared to have been made of Geoghegan for payment, yet if the jury were satisfied that no demand could have been made upon him (as there was evidence that he had left Ireland before the maturity of the bill and note), those were circumstances that might excuse the holder from making such demand, and that no notice could be given to defendant, by reason of his having absconded before either the bill or note fell due, and therefore plaintiffs might recover on the first and second counts. Also, that plaintiffs might recover on the third count for goods sold, &c., as it was proved that defendant was in reality the principal debtor in the sums set forth in the bill and note, which were lent by Geoghegan for the sole and exclusive accommodation of defendant, who had bought goods from plaintiffs, and had no way paid but by said bill and note, which were with plaintiffs, and from which presumption of non-payment would arise.

The Judge refused so to charge the jury, and charged that the plaintiffs must fail, because there was no evidence of any demand on Geoghegan, or of any circumstances to excuse the want of such demand; and that even though there was evidence that Geoghegan was not in Ireland at the maturity of the bill and note, the plaintiffs must fail, as there was no evidence that they knew of his absence, or made any attempt to find him. That plaintiffs must fail on the third count, as it was incumbent on them to pursue the measures necessary to charge the parties to the bill and note, that the law was the same in relation to accommodation paper, and that although plaintiffs took this paper on account of a precedent debt, still, if there was a third party primarily liable, they were bound to pursue the same steps that would have been necessary to have entitled them to recover on the bill and note; that the fact of Geoghegan's absence was not sufficient to excuse such demand or attempt to make it, and that in point of law he was presumed to have had funds, and to have paid said bill and note.

Errors assigned:

1. Because the Judge below erred in not charging the jury in the way and manner as requested by plaintiffs.

2. Because the said Judge erred in charging that plaintiffs must fail on the first and second counts of his narr., because there was no evidence of a demand at maturity upon Geoghegan, the party primarily liable, or of any circumstance to excuse such demand: there being evidence that he was out of Ireland when such bill

and note fell due, and that no demand could have been made of him.

3. Because the said Judge erred in charging that if there were evidence that Geoghegan was not at the time in Ireland, still plaintiffs must fail, because there was no evidence that they knew of his absence, or made any attempt to find him.

4. Because the said Judge erred in charging that plaintiffs must fail on the third count when the evidence was full and complete that plaintiffs had sold defendant certain goods, for which defendant gave his drafts, of which the present bill and note were renewals, and that said bill and note were with plaintiffs, from which presumption of their non-payment would arise.

5. Because there was evidence that defendant was the real and principal debtor in the amounts represented by the bill and note, and that Geoghegan had lent his name for the sole and exclusive accommodation of defendant, who had not put him in funds to meet the same. That defendant was in reality the principal debtor, and not a security in the amounts represented by the bill and note, yet the Judge charged that the plaintiffs must fail on the count for goods sold, &c., and that it was still necessary that plaintiffs should pursue the same steps, as would entitle them to recover on the note and bill.

6. Because the Judge erred in charging that there was a legal presumption of payment by Geoghegan, notwithstanding the bill and note were in possession of plaintiffs; that they were given for defendant's sole and exclusive accommodation; that defendant was the principal debtor for the goods sold, &c., and that he had in no wise settled for the same except by said bill and note which were with plaintiffs.

*J. A. Phillips,* for plaintiffs in error. Notice is not necessary when the drawer has no effects in the hands of the drawee. 1 *T. R.* 406; 2 *T. R.* 713. Here we showed that the defendant was the real debtor, and had no funds in the hands of Geoghegan. *De Berdt* v. *Atkinson,* (2 *H. Black.* 336), went so far as to hold that insolvency would excuse want of notice; but that was overruled by *Nicholson* v. *Gouthit,* (*Ib.* 609). In 17 *Wend.* 94, it was held the endorser is not discharged by want of notice, where it is clearly shown he has sustained no damage. In 1 *Serg. & Rawle* 334, where the endorser accepted a general assignment, it was held an excuse. 5 *Mass.* 170; 1 *Esp. R.* 302. The same law exists as to notes; and in 4 *Cra.* 141, it is held that in all cases of endorsement for accommodation the maker of a note is like the acceptor of a bill. 7 *Wend.* 165; 1 *Wash. C. C. Rep.* 461; 2 *Ib.* 514; 4 *Maule & Selw.* 226; 1 *Bos. & P.* 652.

Both Geoghegan and Morrison had left Ireland before the bill fell due, and had sailed for the United States. *Carth.* 509, decides that it is sufficient that the drawee could not be found; the holder

[Reid v. Morrison.]

need not aver search. If the drawee absconds, or the maker of a note cannot be found, notice is not necessary. 4 *Mass.* 45; 4 *Serg. & Rawle* 480; 4 *Watts* 448.

A note is not payment unless distinctly received as such. 1 *Wend.* 424. The holder of a negotiable note may recover on the count for goods sold. 5 *Wend.* 490. The receipt of a note is no extinguishment of the debt. It may suspend the remedy, but that is all. 8 *Cow.* 77; 3 *Cow.* 147; 15 *Johns.* 247; *Ib.* 224; 5 *Johns.* 68; 2 *W. C. C. R.* 191.

*Whitman, contra.* Demand, or an attempt to make it, and notice, or an attempt to give it, are necessary, and are not excused by the absconding. Death, bankruptcy, or known insolvency of the drawee, does not excuse due and immediate notice of non-acceptance to the drawer; though a neglect to give immediate notice may be excused by absconding, or death of the holder's agent, provided it be given as soon as possible. Here no attempt to demand or give notice was made for nine years; yet there is evidence that the plaintiff knew shortly after Morrison left that he was in Philadelphia. It is to be presumed, as nothing to the contrary appears, that Geoghegan returned to Ireland.

Demand must be made at the house of the acceptor. *Chitt.* 401. *Non constat* but what Geoghegan left a clerk at his place of business in Ireland. It is not said he absconded, only that he left there. There is no evidence of any attempt to find him or his place of business. Though the absconding or withdrawal of endorser excuses immediate notice, yet notice must be given as soon as his residence is discovered. *Chitt. on Bills* 486; 3 *Camp.* 262.

An acceptor or maker is presumed to have funds; and the want of funds will not excuse notice, if the drawer has reason to suppose the drawee will accept or pay.

The plaintiff cannot recover on the common counts. This is a bill and note, not between the original parties, but a third person (Geoghegan) is a party. The plaintiff cannot recover on the common counts if the party to the bill is discharged by the laches of the holder. *Chitt. on Bills* 594. Nor if there be no privity between the holder and acceptor. 9 *Serg. & Rawle* 229; 12 *Serg. & Rawle* 382.

The opinion of the Court was delivered by

SERGEANT, J.—The principal question arising on the charge of the court below is, whether there existed circumstances to excuse the want of a demand on Geoghegan, the maker of the promissory note and the drawer of the inland bill of exchange. The rule of law on this subject seems to be, that if the drawee has merely removed from his usual place of residence to another in the same state or kingdom, it is incumbent on the holder to make every reasonable endeavour to find out whither he has removed, and, in

[Reid v. Morrison.]

case he succeed in such attempt, to present the note or bill for payment at that place. But if the drawee or maker has absconded, that circumstance will dispense with the necessity of making any further inquiry after him. *Chitt. on Bills* 261; *Bayl.* 95; *Duncan* v. *M'Cullough*, (4 *Serg. & Rawle* 480). The same rule which exists in the case of absconding applies to that of the removal of the maker or drawee into another jurisdiction after the execution of the instrument. In *M'Gruder* v. *Bank of Washington*, (9 *Wheat.* 661), the maker of the note removed from the District of Columbia to the State of Maryland, to a place within about nine miles of the District; there was nothing to sanction its being construed into an act of absconding, and the court say that from his absconding or removal out of the Kingdom, the endorser is held in England to stand committed; and here, a removal from the seaboard to the frontier, or *vice versâ*, would be attended with all the hardships to a holder, especially one of the same state with the maker, that could result from crossing the British Channel. See also *Galpin* v. *Hard*, (3 *M'Cord* 398). In the case before us, all the parties lived in Ireland when the instruments were executed. It was also proved that Geoghegan, the maker of the note and drawee of the bill, left his place of residence in Ireland for America before they fell due, in company with the defendant, the endorser; and there is no evidence of Geoghegan's having been heard of since. It was, therefore, impossible to make a presentment to him in Ireland, and it would seem the holder was not bound to search for him in a foreign country, but his removal dispensed with any further effort, and made the endorser *ipso facto* liable without it.

It is also contended, on behalf of the defendant, that the holder knew, within a year or more, that the defendant, the endorser, was in Philadelphia, and gave him no notice. The evidence, however, is positive that the defendant absconded to a foreign country before the maturity of the bill, and that would dispense with the necessity of notice, on the principles before stated, were it otherwise requisite. Besides, it appears that the defendant was the principal debtor, and Geoghegan lent his name for the use and accommodation of the defendant, the drawer and endorser of the bill and endorser of the note; in which case he is considered as a drawer without funds in the hands of the acceptor and not entitled to notice. 4 *Cranch* 141; *Agan* v. *M'Manus*, (11 *Johns. R.* 180).

As to the third count, the right to recover on the count for goods sold and delivered, depends on the same principles. If the plaintiff was not guilty of laches, he may recover on the instruments or on the third count, if the evidence sustains his cause of action.

Judgment reversed, and *venire facias de novo* awarded.