22 U.S. 598 (1824)
9 Wheat. 598
GEORGE M`GRUDER, Plaintiff in Error,
v.
The PRESIDENT, DIRECTORS, AND COMPANY OF THE BANK OF WASHINGTON, Defendants in Error.
Supreme Court of United States.
March 13, 1824.
The opinion of the Court was delivered by Mr. Justice JOHNSON.
*599 This case comes up from the Circuit Court of the District of Columbia, in which a suit was instituted against the plaintiff here, as endorser of one Patrick M`Gruder.
The facts are exhibited in a stated case, upon which, by consent, an alternative judgment is to be entered. The judgment below was for the plaintiffs in the action, and the defendant brings this writ of error to have that judgment reversed, and a judgment entered in his favour.
The leading facts in the cause are so much identified with those in the case of Renner v. The Bank of Columbia,[a] decided at the present term, on the question relative to the days of grace, that the decision in that cause disposes of the principal question raised in this.
But there is another point presented in the present cause. There was no actual demand made on the drawer of this note, and the question intended to be presented was, whether the facts stated will excuse it.
At the time of drawing the note, and until within ten days of its falling due, the maker was a housekeeper in the District of Columbia. But he then removed to the State of Maryland, to a place within about nine miles of the District. The case admits, that neither the holder of the note, nor the notary, knew of his removal or place of residence; but the circumstances of his removal had nothing in them to sanction its being construed into an act of absconding. The words of *600 the admission to this point are, that he "went to the house where the said Patrick had last resided, and from which he had removed, as aforesaid, in order there to present the said note, and demand payment of the same; and not finding him there, and being ignorant of his place of residence, returned the said note under protest."
The alternative in which the judgment of the Court is to be rendered, is not very appropriately stated; but since the absurdity cannot have entered into the minds of the parties, that, not knowing of the removal or present abode of the drawer, the holder was still bound to follow him into Maryland, we will construe the submission with reference to the facts admitted; and then the question raised is,
Whether the holder had done all that he was bound to do, to excuse a personal demand upon the maker.
On this subject the law is clear: a demand on the maker is, in general, indispensable; and that demand must be made at his place of abode or place of business. That it should be strictly personal, in the language of the submission, is not required: it is enough if it is at his place of abode, or, generally, at the place where he ought to be found. But his actual removal is here a fact in the case, and in this, as well as every other case, it is incumbent upon the endorsee to show due diligence. Now, that the notary should not have found the maker at this late residence, was the necessary consequence of his removal, and is entirely consistent with the supposition of his not *601 having made any one of those inquiries which would have led to a development of the cause why he did not find him there. Non constat, but he may have removed to the next door, and the first question would, most probably, have extracted information that would have put him on further inquiry. Had the house been shut up, he might, with equal correctness, have returned, "that he had not found him," and yet that clearly would not have excused the demand, unless followed by reasonable inquiries.
The party must, then, be considered as lying under the same obligations as if, having made inquiry, he had ascertained that the maker had removed to a distance of nine miles, and into another jurisdiction. This is the utmost his inquiries could have extracted, and marks, of course, the outlines of his legal duties.
Mere distance is, in itself, no excuse from demand; but, in general, the endorser takes upon himself the inconvenience resulting from that cause. Nor is the benefit of the post office allowed him, as in the case of notice to the endorser.
But the question on the recent removal into another jurisdiction, is a new one, and one of some nicety. In case of original residence in a State different from that of the endorser, at the time of taking the paper, there can be no question; but how far, in case of subsequent and recent removal to another State, the holder shall be required to pursue the maker, is a question not without its difficulties.
We think that reason and convenience are in *602 favour of sustaining the doctrine, that such a removal is an excuse from actual demand. Precision and certainty are often of more importance to the rules of law, than their abstract justice. On this point, there is no other rule that can be laid down, which will not leave too much latitude as to place and distance. Besides which, it is consistent with analogy to other cases, that the endorser should stand committed, in this respect, by the conduct of the maker. For his absconding or removal out of the kingdom, the endorser is held, in England, to stand committed; and, although from the contiguity, and, in some instances, reduced size of the States, and their union under the general government, the analogy is not perfect, yet it is obvious, that a removal from the seaboard to the frontier States, or vice versa, would be attended with all the hardships to a holder, especially one of the same State with the maker, that could result from crossing the British channel.
With this view of the subject, we are of opinion that the judgment below, although rendered on a different ground, must be sustained.
Judgment affirmed.
NOTES
[a] Ante, p. 581.